❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with phone number<br>(202)753-9072, as further described in<br>Attachment A | )<br>)<br>)   Case No.23-986M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 8/24/2023 _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 8/10/2023 @ 3:13 p.m. _____

City and state:   Milwaukee, WI _____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the following phone number and for the following time period, that are stored at premises controlled by J2 Web Services, Inc., a company that accepts service of legal process at 700 S. Flower St., Los Angeles, California 90017.

1. **(202)753-9072** (from September 28, 2022 to present)

## ATTACHMENT B

### Particular Things to be Disclosed and Seized

**I.      Information to be disclosed by J2 Web Services, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each of the accounts or identifiers listed in Attachment A:

a.      All stored electronic communications (including drafts, sent items, deleted items, stored backup copies and attachments), voicemails, images, videos, and other stored content information, contained in, or on behalf of, the accounts and the date range noted in Attachment A.

b.      All histories, profiles, contact lists, e-mail addresses, attachments, screen names, name, age, telephone number, physical address, and/or user IDs, associated with the accounts and the date range noted in Attachment A of the search warrant;

c.      Logs of all access to the accounts, including but not limited to all electronic communications sent to or from the account, including dates, times of access and the Internet Protocol addresses (IP addresses) from which the account was accessed, for the accounts and the date range noted in Attachment A of the search warrant;

d.      All transactional information concerning activity associated with the accounts, including log files, dates, times, methods of connecting, and/or locations, from the accounts and the date range noted in Attachment A of the search warrant;

e.      All business records and subscriber information, in any form kept, concerning the accounts, including applications, account creation date and time, all full names, screen names, and account names associated with the subscribers, profile photos, contact lists, group chats, methods of payment, telephone numbers, addresses, and detailed billing records, from the accounts and the date range noted in Attachment A of the search

warrant; and

      f.     All records indicating the services available to subscribers of the account, from the accounts and the date range noted in Attachment A of the search warrant.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet), including but not limited to, information pertaining to the following matters:

    a.   The sale and distribution of controlled substances;

    b.   The exchange or laundering of funds related to the sale and distribution of controlled substances;

    c.   Evidence indicating how and when the J2 Web Services account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

    d.   Evidence indicating the J2 Web Services account owner's state of mind as it relates to the crime under investigation;

    e.   The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

    f.   Other accounts used by the persons using the account;

    g.   The devices used to access the account;

h.  The identity of the person(s) who communicated with the account about matters relating to the sale and distribution of controlled substances, including records that help reveal their whereabouts;

i.  Financial information, credit card numbers, social security numbers, and other personal identifiable information stored on/in the J2 Web Services account; and

j.  Communications and files that contain IP addresses and username and passwords.

The terms "records," includes all information recorded in any form, visual or aural, including the originals and all non- identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following: graphic records or representations, photographs, slides, drawings, designs,graphs, charts, pictures, sketches, images, films, and aural records or representations.

The term "records" includes all of the foregoing, in whatever form and by whatever means, and their drafts, or modifications that may have been created or storedon a computer hard drive.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Information associated with phone number (202)<br>753-9072, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)     Case No. 23-986M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846; & 841(h), 843(c)(2)(A) | Distribution and conspiracy to distribute controlled substances; Offenses involving distribution of controlled substances by means of the internet. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRYAN AYERS    Digitally signed by BRYAN AYERS
Date: 2023.08.09 14:09:14 -05'00'

*Applicant's signature*

Bryan Ayers, DEA SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 8/10/2023

*Judge's signature*

City and state:   Milwaukee, WI      Honorable Nancy Joseph, U.S. Magistrate Attorney

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Bryan Ayers, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a J2 Web Services account that is stored at premises owned, maintained, controlled, or operated by J2 Web Services, Inc., a Voice over Internet Protocol (VoIP) company headquartered in Los Angeles, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require J2 Web Services, Inc. to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the specified J2 Web Services account.

2.      I am a Special Agent assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA).  I have worked full-time as a Special Agent for the past 3 years.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, computer crimes, and illegal drug diversion by DEA registrants. I have worked with informants in the investigations of drug trafficking. I have participated in the application for and execution of numerous search warrants.  I have participated directly in numerous narcotics

investigations and arrests in which controlled substances, drug paraphernalia, drug proceeds, and digital evidence were seized. I am familiar with methods that are commonly used by drug traffickers to package and prepare controlled substances for sale.

4. The statements in this affidavit are based on my personal knowledge, information I have received from other law enforcement personnel, publicly available information, and from persons with knowledge of relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.

5. Based on the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that the information associated with the accounts identified in Attachment A, will contain fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet) (the "Subject Offenses"), as further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## STATUTORY BACKGROUND

7. The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code,

Section 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). *See* 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), 843(c)(2)(A).

8.     According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

9.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. *See* 21 C.F.R. § 1301.11(b).

## PROBABLE CAUSE

10.     Based on the investigation described below, case agents have identified a series of illegal online pharmacies distributing controlled substances without any prescriptions required by

3

the customers. The call center is based in India with a vast network of domestic re-shippers who receive bulk drug parcels from overseas and from other domestic re-shippers. The domestic re-shippers then break down the large parcels into smaller quantities and ship them, generally via USPS, to customers throughout the U.S. The primary phone number posted on some of the online pharmacy websites is **(202)753-9072,** and this is the phone number an undercover agent text messages and calls to place drug orders. Case agents have interviewed multiple co-conspirators and executed federal search warrants on some of the domestic re-shippers and payment processors which has resulted in the seizure of at least 200,000 controlled pharmaceutical tablets and the seizure of drug proceeds.

11. In 2015, the Milwaukee District Office of the DEA initiated an investigation into a series of related internet pharmacies, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription. During the course of the investigation in 2019, case agents identified a co-conspirator in Florida (hereinafter referred to as "SOI-1") and a co-conspirator in Texas (hereinafter referred to as "SOI-2"). These two co-conspirators were working together to receive bulk shipments of controlled pharmaceuticals and reship them to customers throughout the United States. An undercover agent in the Eastern District of Wisconsin purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2 between July 2019 and August 2020. Subsequent analysis of these suspected controlled substances by the DEA laboratory, identified controlled substances including heroin, methamphetamine, ketamine, tramadol, diazepam, alprazolam, and modafinil.

12. In August 2020, case agents executed federal search warrants in Florida and Texas at the residences of SOI-1 and SOI-2. Case agents seized electronic devices and documents containing evidence identifying many of the drug suppliers and customers, communication related

to the sale of controlled substances, and money laundering of drug proceeds. Case agents also seized approximately $100,000 in drug proceeds and different types of suspected controlled pharmaceuticals. Case agents have had the opportunity to interview SOI-1 and SOI-2 multiple times about the various drug suppliers and the circumstances around communication with the suppliers and drug payments to the suppliers. SOI-1 and SOI-2 identified multiple drug suppliers, email accounts, Bitcoin accounts, and WhatsApp accounts used by their drug suppliers to conduct drug transactions.

13.     SOI-1 identified an online pharmacy www.pill2days.com ("PILL2DAYS"), from which SOI-1 had purchased Xanax (a Schedule IV controlled substance) and suspected Adderall (a Schedule II controlled substance) in the summer of 2020. SOI-1 communicated with the website representative via email. Case agents later reviewed these emails and saw the discussion of controlled substances being shipped from overseas to the United States, domestically from re-shippers located in the United States, prices, a drug photograph, and quantities. SOI-2 was responsible for sending the drug payment, so SOI-2 communicated with a website representative via telephone at phone number **(202)753-9072**.

14.     SOI-1 and SOI-2 were told by PILL2DAYS representatives that they ship pharmaceuticals from overseas to U.S. customers at the advertised prices on the website.  At a significantly higher price, U.S. customers can receive the drug parcels from domestic re-shippers they have established. SOI-1 stated he was aware of re-shippers in Arizona and Florida. In August 2020, case agents were able to intercept and seize a parcel from PILL2DAYS to SOI-2, which was supposed to contain 360 tablets of Adderall. This parcel was shipped by a re-shipper in Vermont. These tablets were sent to the DEA laboratory, and found to contain 364 tablets of modafinil (a Schedule IV controlled substance).  Case agents later reviewed financial records and found that

5

SOI-1 and SOI-2 sent payment for the Xanax and Adderall purchases to bank accounts being used by the DTO to process customer payments.

15.     Case agents reviewed the PILL2DAYS online pharmacy website www.pill2days.com.  This website offers the following controlled substances for sale:

- Adderall – a Schedule II controlled substance
- Phentermine – a Schedule IV controlled substance
- Diazepam – a Schedule IV controlled substance
- Ativan – a Schedule IV controlled substance
- Klonopin – a Schedule IV controlled substance
- Xanax – a Schedule IV controlled substance
- Ambien – a Schedule IV controlled substance
- Soma (carisoprodol) – a Schedule IV controlled substance
- Tramadol - a Schedule IV controlled substance.

16.     In December 2020, case agents began conducting multiple undercover purchases from PILL2DAYS. To date, case agents have purchased drugs, to include but not limited to, tramadol, tapentadol, purported oxycodone, purported hydrocodone, purported Adderall, codeine, and Xanax (alprazolam).  This DTO has a regular supply providing counterfeit oxycodone (containing fentanyl and/or p-fluorofentanyl) and counterfeit Adderall (containing methamphetamine and/or p-fluorofentanyl).

17.     On June 2, 2022, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 90 tablets of purported oxycodone 30mg (a schedule II controlled substance) and 180 tablets of purported Adderall 30mg (a schedule II controlled substance).  In connection with the purchase, case agents were directed, via text message, to conduct a bank transfer, via Zelle, to a bank account linked to the email address praveen2_2@hotmail.com and name "Himani Gupta".

Case agents communicated with the PILL2DAYS employee, Michael, via text message. The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.** The undercover also received an email from PILL2DAYS providing the tracking number. The email signature listed their phone number as **(202)753-9072.** Case agents received the shipment of the 90 tablets of purported oxycodone 30mg and 180 tablets of purported Adderall 30mg which were both shipped in the same parcel from "Sun Desyn" with a return address of 1438 S. Main St., Los Angeles, California 90063. The medication was sent to the DEA laboratory in Chicago, and analysis revealed the purported oxycodone contained p-fluorofentanyl (9.7 grams mixture - a schedule I controlled substance) and the 180 tablets of purported Adderall contained p-fluorofentanyl (72.271 grams mixture - a schedule I controlled substance).

18. On July 12, 2022, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 180 tablets of purported tapentadol 100mg (a schedule II controlled substance) and 270 tablets of purported Adderall 30mg (a schedule II controlled substance). In connection with the purchase, case agents were directed, via text message, to conduct a bank transfer, via Zelle, to a bank account linked to phone number (941)807-2638 and name "Rafael Jimenez". Case agents communicated with the PILL2DAYS employee, Michael, via text message. The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.** The undercover also received an email from PILL2DAYS providing the tracking number. The email signature listed their phone number as **(202)753-9072.** Case agents received the shipment of the 180 tablets of purported tapentadol 100mg from a shipper in Hayward, California who was later identified. This Hayward, California

7

shipper sent a total of eight drug parcels and paid for postage using his own debit card.  Case agents also received the shipment of 270 tablets of purported Adderall 30mg which was shipped from "Sun" with a return address of 1428 S. Main St., Los Angeles, California 90036.  The medication was sent to the DEA laboratory in Chicago, and analysis revealed the purported Adderall contained p-fluorofentanyl (84.3 grams mixture - a schedule I controlled substance) and the purported tapentadol contained tapentadol (93.1 grams - a schedule II controlled substance).

19.     Case agents acquired video surveillance from a Corona, California U.S. Post Office of the person who shipped the purported Adderall from this July 12, 2022 undercover buy.  This male drug shipper was in the post office for a long period of time, shipped approximately twenty suspected parcels, and after shipping the parcels, the drug shipper could be seen looking at the tracking details from the receipt and then appeared to text message or email the details.

20.     On August 25, 2022, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 180 tablets of purported tapentadol 100mg (a schedule II controlled substance) and 180 tablets of purported Adderall 30mg (a schedule II controlled substance).  In connection with the purchase, case agents were directed, via text message, to conduct a bank transfer, via Zelle, to a bank account linked to email address praveen2_2@hotmail.com and name "Himani Gupta".  Case agents communicated with the PILL2DAYS employee, Michael, via text message. The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.**  The undercover also received an email from PILL2DAYS providing the tracking numbers.  The email signature listed their phone number as **(202)753-9072.**  Case agents received the shipment of the 180 tablets of purported tapentadol 100mg from a shipper in Zephyrhills, Florida.  Case agents also received the

shipment of 180 tablets of purported Adderall 30mg which was shipped from a shipper in Columbia, South Carolina. The medications were sent to the DEA laboratory in Chicago, and analysis revealed the purported tapentadol contained tapentadol (87.1 grams - a schedule II controlled substance) and the analysis of the purported Adderall tablets is pending. Due to a delay in receiving these two parcels, PILL2DAYS had a third drug parcel shipped to the undercover. This third parcel tracking number was emailed to the undercover, and the email identified their phone number as **(202)753-9072.** Case agents received the second shipment of 180 tablets of purported Adderall 30mg from a known shipper in Corona, California. This medication was sent to the DEA laboratory in Chicago, and analysis revealed the purported Adderall contained acetaminophen only (a non-controlled substance).

21. On September 6, 2022, case agents received records from J2 Web Services related to phone number **(202)753-9072**, pursuant to a DEA Administrative subpoena. These records included subscriber details, phone call and text messaging tolls, and source of funds. The records show this phone account was created on June 3, 2020. The most recent source of funds for this phone account is as follows:

- Card details: Mastercard ending in 0423
- Name: MICHAEL JUDE PUGLIESE
- Address: 4129 Adishian Way, Corona, CA 92883

22. Case agents reviewed the phone tolls and found phone number (310)985-8805 which is in regular communication with **(202)753-9072.** Case agents received T-Mobile records pursuant to a DEA administrative subpoena, related to phone number (310)985-8805. The T-Mobile subscriber is as follows:

- Customer name: Michael Mike

9

- Subscriber name: MICHAEL PUGLIESE
- Service address: 39671 CORTE SANTA BARBARA, MURRIETA, CA 92563 USA
- Billing address: 39671 CORTE SANTA BARBARA, MURRIETA, CA 92563 USA

23.     Case agents acquired a California driver's license photograph of MICHAEL PUGLIESE and compared it to the person from the Corona, California U.S. Post Office video surveillance.  Case agents positively identified the drug shipper from the July 12, 2022 undercover purchase as PUGLIESE.  Further review of open source records (LinkedIn) and a public State of California licensing website have revealed that PUGLIESE is a Los Angeles Firefighter/Paramedic.

24.     Case agents queried U.S. Customs and Border Protection files for PUGLIESE's last known address of 4129 Adishian Way, Corona, CA 92883.  These records revealed the following five seized drug parcels all addressed to MICHAEL PUGLIESE:

- CBP (NY JFK) Entry Date: 08/28/2021 - seized Tapentadol (280 grams) shipped from India
- CBP (Chicago) Entry Date: 08/03/2021 - seized scheduled controlled substance shipped from India
- CBP (NY JFK) Entry Date: 07/18/2021 - seized Tapentadol (348 grams) shipped from India
- CBP (NY JFK) Entry Date: 10/12/2020 - seized Carisoprodol (550 grams) shipped from India
- CBP (Cleveland, Ohio) Entry Date: 11/09/2022 - seized alprazolam (3.46 kg) shipped from United Kingdom

25.     On September 23, 2022, the Honorable William E. Duffin, United States Magistrate Judge, issued a warrant for records, to include text message content, messaged photographs, and voicemails from J2 Web Services, Inc. for the phone number **(202)753-9072** used by the online pharmacy to take drug orders and coordinate drug payments.

10

26.     Case agents reviewed the records and confirmed PUGLIESE was still listed as the current source of funds.   Numerous text messages were found between (310)985-8805 (PUGLIESE) and the online pharmacy number **(202)753-9072**.  The following are summarized details learned from reviewing text message conversations and does not reflect all evidence:

a.  This J2 Web Services, Inc. telephone account is used by one of two partners who run the online pharmacy.  Conversations are with customers discussing drug orders, drug payments, and drug shipments.  Conversations are also with drug shippers such as PUGLIESE.

b.  On May 17, 2021, the online pharmacy employee text messaged (310)985-8805 (PUGLIESE) calling him "Michael" and asking if he wanted to buy more tapentadol (a Schedule II controlled substance).  This was the first message with PUGLIESE that was located, but PUGLIESE was already an existing customer at this time.  At this point in time, PUGLIESE was buying drugs from the online pharmacy to redistribute which he said he has been doing for years.

c.  PUGLIESE purchased tapentadol, Soma, tramadol, and Cialis which was addressed to "MICHAEL PUGLIESE".  Another time, Soma was offered to PUGLIESE, but he said he already had two thousand Soma tablets in transit from the United Kingdom.

d.  PUGLIESE discussed his identity and family.  He said he is from New York, is married, has children, provided his date of birth, and he and his wife both own firearms and shoot regularly.  PUGLIESE shared photographs of his firearms, to include an AR-15 style rifle, photographs of his vehicle, and photographs of

himself. Case agents were able to positively identify him from previously viewing PUGLIESE's California driver's license photograph.

e. PUGLIESE said he lives in California, saves lives working as a firefighter responding to 10 to 15 fentanyl overdoses per shift, and has at least $2 million in assets.

f. The online pharmacy employee asked PUGLIESE if the medications they were selling were actually drugs. PUGLIESE said "Not really. It's def not as strong that's for sure". PUGLIESE said what they are doing helps people, and it is not bad at all. PUGLIESE followed that up by saying he saves lives for a living and has likely saved thousands of lives.

g. On April 8, 2022, PUGLIESE was asked to begin receiving bulk drug parcels on behalf of the online pharmacy and reship the drugs to customers of the online pharmacy. PUGLIESE agreed and said he created the fictitious business Calisun and P.O. Box address of 2279 Eagle Glen Pkwy #112-478, Corona, CA 92883 for this purpose. These bulk parcels contained up to 50,000 tablets per parcel and photographs were sometimes sent by PUGLIESE. Drugs he received to reship included Adderall, oxycodone, hydrocodone, tapentadol, Ambien, Ativan, and tramadol.

h. PUGLIESE was also receiving tens of thousands of dollars in drug payments from customers and then transferred the funds to accounts controlled by the online pharmacy. Customers were directed to send drug payments to Venmo account @bx2la in the name of MICHAEL PUGLIESE, CashApp account controlled by PUGLIESE, Zelle account linked to PUGLIESE's cell phone number, and

PUGLIESE received checks in the mail to deposit into his Bank of America account.

i.  PUGLIESE said he would be out of the country from March 26, 2022 through April 3, 2022.  Case agents checked border crossing records and confirmed PUGLIESE traveled out of the United States during this time period.  This further confirms the person using phone number (310) 985-8805 is PUGLIESE.

j.  PUGLIESE and the online pharmacy employee would communicate by text message, phone calls, and also by WhatsApp.  PUGLIESE would also communicate with the other owner of the online pharmacy.  PUGLIESE would ship the drug parcels, send the customer name, address, drug type, drug quantity, and tracking number to the online pharmacy phone number **(202)753-9072**.  The online pharmacy employee would then text message the same tracking number, acquired from PUGLIESE, to that customer.  This worked the same way with the undercover agent's drug orders.

k.  On April 19, 2022, PUGLIESE sent **(202)753-9072** a photograph of a USPS receipt showing tracking numbers.  It appeared that PUGLIESE took this photograph inside a fire department vehicle.  Case agents believe this means that PUGLIESE is conducting his drug trafficking activities while working in his capacity as a Los Angeles Firefighter.

l.  PUGLIESE was being asked to receive greater amounts of money.  PUGLIESE admitted he was laundering money, and they needed to keep the amounts below $9,999 to avoid detection by the IRS.  At one point, he said he had too much drugs in his possession to be laundering money for free.  PUGLIESE then started getting

paid a percentage of the drug payments he laundered, in addition to, being paid $25 for each parcel shipped.

m. PUGLIESE sent **(202)753-9072** a photograph of a receipt showing he shipped drug parcels from UPS Store located at 1973 Foothill Pkwy, Suite 110, Corona, California.

n. On May 16, 2022, a customer was unhappy because she was sent a strong dosage of Soma (a Schedule IV controlled substance) causing her to overdose in front of her children and fall injuring herself. The customer referred to the pills as "poison" and "fentanyl." This customer was directed from phone number **(202)753-9072** to return the drugs to "MICHAEL PUGLIESE at 4129 Adishian Way, Corona, California 92883." This customer continued buying the same drug at a lower dosage.

o. On June 14, 2022, PUGLIESE said he was opening a Stamps.com account and would be managing all future drug parcels with Stamps.com. Many of the receipts show the sender as "Sun Desyn." Case agents know that it was around this time that the undercover drug parcels switched from cash paid postage to Stamps.com paid postage.

p. PUGLIESE said he built his current residence two years ago for $600,000, and it is now worth $1.6 million. PUGLIESE sent multiple photographs of his 40 foot motorhome. PUGLIESE said he wants to continue working with the online pharmacy for another five years to make enough money for PUGLIESE and his family.

q.  On July 7, 2022, PUGLIESE agreed to pay for the phone account used by the online pharmacy.  PUGLIESE was provided the login details via text message from phone number **(202)753-9072**.

r.  On August 16, 2022, PUGLIESE sent photographs of his prescription bottles after receiving a leg infection.  The pill bottles showed the name "MIKE PUGLIESE."

s.  On August 18, 2022, PUGLIESE said he was at the post office shipping drug parcels.  PUGLIESE sent a photograph of at least six parcels displaying the return address he uses on drug parcels.  Next to the drug parcels was a Mercedes key fob.  As a result, case agents believe PUGLIESE utilized his white 2022 Mercedes GLB250W bearing California license plate 9CLU636 and vehicle identification number W1N4M4GB0NW248234 to transport the drug parcels to the post office.

t.  On August 24, 2022, the online pharmacy employee said they have another shipper who ships daily for them who is a female.  PUGLIESE text messaged **(202)753-9072** stating he shipped 176 parcels in just over a month.

u.  On August 29, 2022, PUGLIESE sent phone number **(202)753-9072** photographs of a white Mercedes and said he just bought the vehicle. (Case agents identified this vehicle as a white 2022 Mercedes GLB250W bearing California license plate 9CLU636 and vehicle identification number W1N4M4GB0NW248234, registered to Michael Jude Pugliese or Julie Pugliese at 4129 Adishian Way, Corona, California 92883.)

v.  On September 2, 2022, PUGLIESE sent phone number **(202)753-9072** a photograph while driving his white 2022 Mercedes GLB250W bearing California license plate 9CLU636 and vehicle identification number

15

W1N4M4GB0NW248234. This photograph showed a bulk drug parcel located on the center console inside the Mercedes. This parcel was shipped from India to PUGLIESE at his mailbox located at 1973 Foothill Pkwy., Suite 110 #545, Corona, CA 92881, which case agents know PUGLIESE uses to receive drug parcels. PUGLIESE then sent another photograph showing the many blister packs of zolpidem (a schedule IV controlled substance) that were found inside this parcel. Case agents believe PUGLIESE used his white 2022 Mercedes GLB250W bearing California license plate 9CLU636 and vehicle identification number W1N4M4GB0NW248234 to pick up the drug parcel from his mailbox and transport it to his residence to open and prepare for reshipping to customers.

w. On September 7, 2022, PUGLIESE text messaged phone number **(202)753-9072** photographs of several controlled steroids which were manufactured overseas. PUGLIESE said he has been using them for the past two years, and every firefighter and policer officer he knows uses testosterone. Case agents do not believe these steroids are prescribed by a doctor as they are common steroids illegally used by body builders and because at least some of them were manufactured overseas.

x. On September 21, 2022, PUGLIESE sent two photographs of a damaged windshield on his white Mercedes and said it happened while he was driving the vehicle and a rock hit the windshield.

y. On September 27, 2022, PUGLIESE sent a photograph of the crack on the windshield of his white 2022 Mercedes GLB250W bearing California license plate 9CLU636 and vehicle identification number W1N4M4GB0NW248234 getting

larger in size. In this photograph, case agents are able to read the vehicle's vehicle identification number W1N4M4GB0NW248234.

27.     On November 1, 2022, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 90 tablets of purported Adderall 30mg (a Schedule II controlled substance), 180 tablets of purported tapentadol 100mg (a Schedule II controlled substance), 90 tablets of purported oxycodone 30mg (a Schedule II controlled substance), 60 tablets of purported oxycodone 10mg (a Schedule II controlled substance), and another 90 tablets of purported oxycodone 30mg (a Schedule II controlled substance).  In connection with the purchase, case agents were directed, via text message, to conduct a bank transfer, via Zelle, to a bank account linked to email address praveen2_2@hotmail.com and name "Himani Gupta".  Case agents communicated with the PILL2DAYS employee, Michael, via text message.  The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.**  . Case agents received all of the purchased drugs in three parcels. Two parcels from PUGLIESE contained four of the drugs, and one parcel from an unrelated shipper in Bronx, New York contained the tapentadol.  The medications were sent to the DEA laboratory in Chicago.  The laboratory results for the 180 tablets of tapentadol from New York revealed the tablets contain tapentadol (86.8 grams – a Schedule II controlled substance).  The laboratory results for the received 109 tablets of purported Adderall 30mg from PUGLIESE were found to contain p-Fluorofentanyl (41.247 grams mixture - a Schedule I controlled substance). The remaining 58 tablets of purported oxycodone 30mg, 107 tablets of purported oxycodone 30mg, and 60 tablets of purported oxycodone 10mg all contained only acetaminophen (a non-controlled substance).

28.     The counterfeit Adderall tablets containing p-Fluorofentanyl, the fake oxycodone 30mg, and fake oxycodone 10mg were first accepted by USPS in Murrieta, California.  The other parcel containing additional tablets of purported oxycodone 30mg was also first accepted by USPS in Murrieta, California.  Both parcels had the postage paid for using Stamps.com, and the return address on both parcels is as follows:

   a.  S Desyn
   b.  39671 Corte Santa Barbara
   c.  Murrieta, CA 92563-5235

29.     On February 17, 2023, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 90 tablets of purported Adderall 30mg (a Schedule II controlled substance) and 180 tablets of purported tapentadol 100mg (a Schedule II controlled substance).  In connection with the purchase, case agents were directed via text message to conduct a Bitcoin payment to Bitcoin address 1Ben4Kgi3hBWjaG4bpPXSrZckpeQ1zYzWg.  Case agents communicated with the PILL2DAYS employee, Michael, via text message.  The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.**  Case agents received both of the purchased drugs in two separate parcels.  The purported Adderall is suspected to have been shipped by PUGLIESE, and the purported tapentadol was shipped from a shipper in Illinois.  The medications were sent to the DEA laboratory in Chicago.  The purported Adderall was found to only contain acetaminophen and the tapentadol analysis is pending.

30.     The purported Adderall tablets were first scanned by the USPS in Anaheim, California and postage was paid with Stamps.com.  This parcel return address which has been linked to PUGLIESE is as follows:

a. S Desyn

b. 39671 Corte Santa Barbara

c. Murrieta, CA 92563-5235

31.     On April 17, 2023, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 90 tablets of purported Adderall 30mg (a Schedule II controlled substance) and 90 tablets of purported oxycodone 30mg (a Schedule II controlled substance). In connection with the purchase, case agents were directed via text message to conduct a Bitcoin payment to Bitcoin address 1Ben4Kgi3hBWjaG4bpPXSrZckpeQ1zYzWg. Case agents communicated with the PILL2DAYS employee, Michael, via text message. The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.** Case agents received both of the purchased drugs in two separate parcels. The purported Adderall is suspected to have been shipped by PUGLIESE, and the purported oxycodone was shipped from a shipper in New York. Case agents tested a small sample of one tablet from each parcel using a Thermo Fisher Scientific TruNarc which case agents have found to be reliable. This test showed the presence of fentanyl (a schedule II controlled substance) contained in the oxycodone sample. Case agents received an inconclusive test result from the Adderall sample. The medications were sent to the DEA laboratory in Chicago and analysis is pending.

32.     The purported Adderall tablets were first scanned by the USPS in Murrieta, California and postage was paid with Stamps.com. This parcel return address which has been linked to PUGLIESE is as follows:

a. S Desyn

b. 39671 Corte Santa Barbara

c. Murrieta, CA 92563-5235

33.     On June 20, 2023, case agents received Verizon records pursuant to a DEA Administrative Subpoena.   These records are pertaining to PUGLIESE's cell phone number (310)985-8805 which PUGLIESE used to communicate with **(202)753-9072.**  The Verizon records did not yield any recent communication through traditional text message between PUGLIESE and **(202)753-9072.**

34.     On June 22, 2023, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number **(202)753-9072**, which is published on the website. Case agents purchased 60 tablets of purported Adderall 30mg (a Schedule II controlled substance), 90 tablets of purported oxycodone 30mg (a Schedule II controlled substance), and 30 tablets of zolpidem (a schedule IV controlled substance).   In connection with the purchase, case agents were directed via text message to conduct a Bitcoin payment to Bitcoin address 1Ben4Kgi3hBWjaG4bpPXSrZckpeQ1zYzWg.   Case agents communicated with the PILL2DAYS employee, Michael, via text message.   The drug order, payment instructions, and sending the undercover the drug parcel tracking number was also done via text message from phone number **(202)753-9072.**  Case agents received all three of the purchased drugs in three parcels from three different domestic shippers.   The purported Adderall arrived from a shipper in Florida, the purported oxycodone arrived from a shipper in New York, and the purported zolpidem is suspected to have been shipped by PUGLIESE.   Case agents tested a small sample of one tablet from each parcel using a Thermo Fisher Scientific TruNarc which case agents have found to be reliable.   This test was inconclusive for the presence of controlled substances in the Adderall sample, showed the presence of fentanyl (a schedule II controlled substance) in the oxycodone sample, and showed the

presence of alprazolam (a schedule IV controlled substance) in the zolpidem sample.  The medications were sent to the DEA laboratory in Chicago for further analysis.

35.     The purported zolpidem tablets were first scanned by the USPS in Murrieta, California and postage was paid with Stamps.com.  This parcel return address which has been previously linked to PUGLIESE is as follows:

    a.   S Desyn

    b.   39671 Corte Santa Barbara

    c.   Murrieta, CA 92563-5235

36.     Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-1 is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

37.     Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information in other investigations, and that information was found to be accurate and reliable.  SOI-2 is cooperating with law enforcement for potential consideration in his new federal felony drug

conspiracy and drug distribution case, and any revocation sentence for his supervised release in the prior case.

38.     Case agents know based on prior communication with J2 Web Services and records acquired pursuant to a DEA administrative subpoena and federal search warrant, J2 Web Services provides the service to phone number **(202)753-9072.** J2 Web Services maintains audio files containing voicemails, text message content, and files such as photographs which are sent/received by this telephone account **(202)753-9072.** J2 Web Services will provide these records upon being served with a warrant. Case agents also know that this account was opened on June 3, 2020, and records were already acquired between June 3, 2020 and September 28, 2022. Case agents know that this telephone account is still in operation and evidence will exist from September 28, 2022 and after.

39.     Based on my training and experience and the provided facts, I believe PILL2DAYS, MICHAEL PUGLIESE, and others are engaged in an elaborate drug trafficking organization (DTO) that ships controlled pharmaceuticals from overseas to the United States. The drugs are either shipped directly to the customers or they are being re-shipped by U.S. drug re-shippers. U.S. co-conspirators are also operating as payment processors to facilitate the drug payments. Based on my training and experience and the facts set forth above, I believe that information related to the J2 Web Services account linked to phone number **(202)753-9072** will include evidence about the DTO.

40.     Case agents have noted that one of the domestic drug shippers, PUGLIESE, is no longer communicating with phone number **(202)753-9072,** via text message or phone call from PUGLIESE's known phone number. Based on recent undercover drug purchases and undercover communication as recent as July 22, 2023 with PILL2DAYS using phone number **(202)753-9072,**

case agents know this phone number is still being used to distribute controlled substances, direct drug payments, and coordinate shipping of drug parcels. In addition, case agents believe updated records from J2 Web Services will reveal the current means of communication between PILL2DAYS and PUGLIESE, which is believed to be either via WhatsApp or a second cell phone number that is unknown to law enforcement. Additionally, the undercover officer received a text message from PILL2DAYS using phone number **(202) 753-9072** on August 8, 2023.

41.     I know that persons involved with owning and/or operating internet pharmacies and providing the drugs for such internet pharmacies must communicate by electronic means, often times text message and phone calls, which is evident in this investigation. These communications include but are not limited to drug orders, drug shipping information, and payments for said drugs. In this investigation specifically, I have had the opportunity to interview multiple DTO members who have communicated with PILL2DAYS co-conspirators at phone number **(202)753-9072**. Furthermore, case agents have communicated with the DTO at phone number **(202)753-9072**. Based on interviews, observing the published phone number on the websites, and undercover communication with DTO members, I know that phone number **(202)753-9072** is a primary form of communication for this DTO. Phone number **(202)753-9072** is being used by customers to place drug orders, coordinate drug shipments, and coordinate drug payments. It is also being used for PILL2DAYS to communicate with drug re-shippers, as is the case with MICHAEL PUGLIESE.

42.     For all of the foregoing reasons, case agents are requesting a search warrant for J2 Web Services account containing the information set forth in Attachment A for the following: **(202)753-9072** for the period of September 28, 2022 to the present**.** This beginning date is the date

previously acquired records ended, and as a result, case agents believe new evidence will exist from September 28, 2022 to the present.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

43.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 2713 by using the warrant to require J2 Web Services to disclose to the government copies of the records and other information (including the content of communications if available) described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

44.     Pursuant to 18 U.S.C. § 2713, this application seeks a warrant to search all responsive records and information under the control of J2 Web Services, a provider subject to the jurisdiction of this court, regardless of where J2 Web Services has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within J2 Web Services' possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## CONCLUSION

45.     Based on the information described above, I request that the Court issue the proposed search warrant for the Subject Account.  Because the warrant will be served on J2 Web

24

Services, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

46.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following phone number and for the following time period, that are stored at premises controlled by J2 Web Services, Inc., a company that accepts service of legal process at 700 S. Flower St., Los Angeles, California 90017.

1. **(202)753-9072** (from September 28, 2022 to present)

## ATTACHMENT B

### Particular Things to be Disclosed and Seized

**I.      Information to be disclosed by J2 Web Services, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each of the accounts or identifiers listed in Attachment A:

a.      All stored electronic communications (including drafts, sent items, deleted items, stored backup copies and attachments), voicemails, images, videos, and other stored content information, contained in, or on behalf of, the accounts and the date range noted in Attachment A.

b.      All histories, profiles, contact lists, e-mail addresses, attachments, screen names, name, age, telephone number, physical address, and/or user IDs, associated with the accounts and the date range noted in Attachment A of the search warrant;

c.      Logs of all access to the accounts, including but not limited to all electronic communications sent to or from the account, including dates, times of access and the Internet Protocol addresses (IP addresses) from which the account was accessed, for the accounts and the date range noted in Attachment A of the search warrant;

d.      All transactional information concerning activity associated with the accounts, including log files, dates, times, methods of connecting, and/or locations, from the accounts and the date range noted in Attachment A of the search warrant;

e.      All business records and subscriber information, in any form kept, concerning the accounts, including applications, account creation date and time, all full names, screen names, and account names associated with the subscribers, profile photos, contact lists, group chats, methods of payment, telephone numbers, addresses, and detailed billing records, from the accounts and the date range noted in Attachment A of the search

warrant; and

  f.  All records indicating the services available to subscribers of the account, from the accounts and the date range noted in Attachment A of the search warrant.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

## II. Information to Be Seized by the Government

  All information described above in Section I that constitutes fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet), including but not limited to, information pertaining to the following matters:

  a. The sale and distribution of controlled substances;

  b. The exchange or laundering of funds related to the sale and distribution of controlled substances;

  c. Evidence indicating how and when the J2 Web Services account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

  d. Evidence indicating the J2 Web Services account owner's state of mind as it relates to the crime under investigation;

  e. The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

  f. Other accounts used by the persons using the account;

  g. The devices used to access the account;

h. The identity of the person(s) who communicated with the account about matters relating to the sale and distribution of controlled substances, including records that help reveal their whereabouts;

i. Financial information, credit card numbers, social security numbers, and other personal identifiable information stored on/in the J2 Web Services account; and

j. Communications and files that contain IP addresses and username and passwords.

The terms "records," includes all information recorded in any form, visual or aural, including the originals and all non- identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following: graphic records or representations, photographs, slides, drawings, designs,graphs, charts, pictures, sketches, images, films, and aural records or representations.

The term "records" includes all of the foregoing, in whatever form and by whatever means, and their drafts, or modifications that may have been created or storedon a computer hard drive.